# EXHIBIT C

Exhibit C

*EXECUTION COPY*

# EMPLOYMENT AGREEMENT
# BY AND BETWEEN
# UNIVERSITY SCHOOL OF NASHVILLE
# AND
# AMANI REED

THIS EMPLOYMENT AGREEMENT (this "Agreement"), effective as of July 1, 2022 (the "Effective Date"), is entered into by and between University School of Nashville, a Tennessee non-profit corporation ("USN" or the "School"), and Amani Reed ("Mr. Reed"), collectively referred to as "the Parties."

**WITNESSETH:**

**WHEREAS,** USN desires to employ Mr. Reed upon the terms and conditions and in the capacities set forth herein; and

**WHEREAS,** Mr. Reed is willing to perform services for and on behalf of USN upon the terms and conditions set forth herein;

**NOW, THEREFORE,** in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, USN and Mr. Reed hereby agree as follows:

1. **Employment and Term of Employment.**

Subject to the terms and conditions of this Agreement, USN hereby agrees to employ Mr. Reed, and Mr. Reed hereby agrees to serve USN, as Director of School for a term (the "Term of Employment") beginning on the Effective Date and ending June 30, 2027 (the "Expiration Date").

2. **Scope of Employment.**

   (a) During the Term of Employment, Mr. Reed agrees to serve as Director of School and shall have and may exercise all the powers, duties and functions as are normal and customary to such position.

   (b) During the Term of Employment, Mr. Reed shall (i) report directly to the USN Board of Trustees and (ii) devote substantially all of his business time, attention, skill and efforts to the faithful performance of his duties hereunder.

   (c) As a material part of his responsibilities, Mr. Reed shall carry out his duties at all times in accordance with law and the directives, regulations and policies of the Board of Trustees, the By-laws and policies of USN. Mr. Reed will carry out his duties in good faith and in a manner that is in the best interest of USN. Mr. Reed agrees to faithfully, industriously and with the maximum application of his experience, ability and talent devote full-time attention and energies to his duties hereunder.

3. **Compensation.**

    (a)    Base Salary. During the Term of Employment, in consideration of Mr. Reed's services hereunder, including, without limitation, service as an Director of School for USN and in consideration of Mr. Reed's covenants regarding confidentiality in Section 5 hereof, Mr. Reed shall receive a base salary that is no less Four Hundred Fifty Thousand ($450,000), and which may be increased by the Board. Such base annual salary shall be payable at such regular intervals as other employees of USN are compensated in accordance with USN's employment practices.

    (b)    Housing support. To assist Mr. Reed and his family with housing, USN shall, during the term of this Agreement and subject to the then-prevailing IRS reporting requirements, provide housing for Mr. Reed and his family at the USN-owned property at 3600 Woodmont Boulevard in Nashville. Additionally, USN commits to a renovation, subject to USN design standards, of 3600 Woodmont up to $500,000. Such renovation will be accomplished as quickly as reasonably practicable upon its vacation by the prior USN Director. The renovation will be approved and managed by the Building and Grounds Committee of the USN Board.

The routine maintenance and upkeep, as well as landscaping and utility expenses, of 3600 Woodmont will be the financial responsibility of USN.

To further ease the transition of Mr. Reed and his family to Nashville, USN shall provide Mr. Reed a temporary housing supplement of $4,000 per month, subject to taxes, beginning July 2022 and ending on the earlier of (i) Mr. Reed moving into 3600 Woodmont or (ii) twelve (12) months.

    (c)    Performance Incentive Bonus. With respect to the fiscal years of USN described below, Mr. Reed shall also be entitled to an annual performance bonus of up to ten percent (10%) of Mr. Reed's base annual salary (the "Incentive Bonus"). The Incentive Bonus shall be based upon the accomplishment of defined goals determined in advance by the good faith mutual agreement of Mr. Reed and the Board prior to July 1 of each year (the beginning of USN's fiscal year for which such bonus will be paid) (the "Incentive Goals"). The Incentive Bonus, if any, payable under this Section 3(c) will be paid to Mr. Reed upon achievement of the Incentive Goals. USN will make all reasonable efforts to pay the Incentive Bonus within the calendar year in which the applicable fiscal year ends.

    (d)    Sign-on Bonus. USN, as soon as practicable after execution of this Agreement, shall pay Mr. Reed One Hundred Seventy-five Thousand ($175,000), subject to mandatory, statutory taxes and withholding. Should Mr. Reed terminate his employment with USN without cause or for good reason prior to June 30, 2027, Mr. Reed shall pay back to USN an amount prorated according to the number of months remaining in this contract term.

    (e)    Deferred Compensation: In addition to the base salary payable to the Director under 3(a) above, USN and Mr. Reed will work in good faith to execute a Deferred Compensation Agreement, through which USN will contribute annually to a 457(b) plan on behalf of Mr. Reed (up to the normal IRS limit).

4. **Benefits.**

(a)     As additional compensation for Mr. Reed's services under this Agreement and for Mr. Reed's covenants regarding confidentiality in Section 5 hereof during the Term of Employment, USN agrees to provide Mr. Reed with any other noncash benefits provided by USN generally to its employees as such benefits may exist from time to time. Such benefits shall include leave or vacation time, medical and dental insurance, life insurance and other health care benefits, retirement and disability benefits as may hereafter be provided by USN in accordance with its policies as well as any employee benefit program for which general officers shall become eligible.

Mr. Reed is authorized to incur reasonable business expenses for promoting the business and reputation of USN, including reasonable expenditures for travel, lodging and business associate entertainment, costs to maintain professional certifications, including fees associated with any continuing education requirements, costs of and travel to appropriate conferences, roles in national organizations, etc. USN shall reimburse Mr. Reed in a timely fashion for reasonable expenses incurred by Mr. Reed in furtherance of USN's business, provided that such expenses are incurred in accordance with USN's policies and upon presentation of adequate documentation in accordance with applicable USN policies. The USN board executive committee shall review Mr. Reed's business expenses on an annual basis.

(b)     Mr. Reed shall be entitled to one year of enrollment for his son, Taye, at USN without any tuition or fee charges. In accordance with IRS regulations, this benefit may be subject to taxes.

### 5.     Confidentiality and Other Matters.

(a)     <u>Confidentiality</u>. Mr. Reed shall hold in a fiduciary capacity for the benefit of USN all confidential information relating to the business of USN that comes into the possession of Mr. Reed during the Term of Employment of which he has knowledge (such information being collectively referred to herein as the "Confidential Information"). During the Term of Employment and after termination of Mr. Reed's employment hereunder, Mr. Reed agrees: (i) to take all such precautions as may be reasonably necessary to prevent the disclosure to any third party of any of the Confidential Information; (ii) not to use for Mr. Reed's own benefit any of the Confidential Information; and (iii) not to aid any other person or entity in the use of the Confidential Information in competition with USN, provided that nothing in this Agreement shall prohibit Mr. Reed from disclosing or using any Confidential Information (a) in the performance of his duties hereunder, (b) as required by applicable law or by valid subpoena or other legal process; provided, however, that written notice of any such intended use shall be delivered to USN by Mr. Reed at least fifteen (15) days before such intended use, (c) in connection with the enforcement of his rights under this Agreement or any other agreement with USN, (d) in connection with the defense or settlement of any claim, suit, or action brought or threatened against Mr. Reed by or in the right of USN, or (e) with the prior written consent of the Board of Trust. Notwithstanding any provision contained herein to the contrary, the term Confidential Information shall not be deemed to include any general knowledge, skills or experience acquired by Mr. Reed or any knowledge or information known or available to the public in general. Mr. Reed further agrees that, if requested by USN in writing at any time for any reason, he will surrender to USN all Confidential Information, and any copies thereof, in his possession and agrees that all such materials and copies thereof, are at all times the property of

USN. Nothing herein shall alter or diminish the application of professional responsibility rules governing Mr. Reed's employment at USN.

(b) <u>Non-Disparagement</u>. Mr. Reed and USN each agree that at all times during and after the Term of Employment, neither of them will make disparaging comments (or induce or encourage others to make disparaging comments) about the other or the other's directors, officers, employees or agents, or their respective operations, financial condition, prospects or services, except as required in connection with the enforcement of their respective rights under this Agreement or any other agreement between them. As to USN, this provision shall apply only to those persons who have actual knowledge of this Section 5(b).

### 6. Termination.

(a) <u>General</u>. Mr. Reed's employment hereunder shall automatically terminate on the earlier of his death or the Expiration Date. Either Mr. Reed or USN may terminate Mr. Reed's employment hereunder at any time prior to the Expiration Date, and for any reason, by delivering a Notice of Termination (defined below) to the other party; provided, however, that (i) if USN terminates Mr. Reed's employment for Cause or if Mr. Reed effects such termination without Good Reason (both as defined below), Mr. Reed shall only be entitled to receive the compensation and other payments described in Section 7(b) below as of such termination date and (ii) if USN effects such termination without Cause or Mr. Reed terminates his employment for Good Reason, Mr. Reed shall be entitled to receive the compensation and other payments described in Section 7(e) below. As used in this Agreement, Notice of Termination means a notice in writing purporting to terminate Mr. Reed's employment in accordance with this Section 7, which notice shall (x) specify the effective date of such termination and (y) in the case of a termination by USN for Cause or disability (as defined below) or a termination by Mr. Reed for Good Reason, set forth in reasonable detail the reason for such termination and the facts and circumstances claimed to provide a basis for such termination.

The Parties hereto agree that should either of them terminate this Agreement during its term Without Cause or Without Good Reason, such terminating party shall provide the other at least eighteen (18) months written notice of intent to terminate and specifically setting forth the effective date of such termination.

(b) Payments to Mr. Reed on Expiration Date or Termination Due to Death, Disability, by USN for Cause or by Mr. Reed Without Good Reason. In the event Mr. Reed's employment hereunder shall automatically terminate on the Expiration Date or in the event of death, disability, termination by USN for Cause or termination by Mr. Reed without Good Reason, Mr. Reed shall only be entitled to receive (i) all unpaid salary and any Incentive Bonus accrued but not yet paid pursuant to Section 3(a) and 3(b) hereof as of the termination date, (ii) any amounts owing to Mr. Reed under Section 4(b) hereof, (iii) those benefits under Section 4 which are required to be provided under the Employee Retirement Income Security Act of 1974 ("ERISA"), or other laws; and (iv) any other amounts due as provided below in this Section 7(b). The amounts described in clauses (i) and (ii) of the foregoing sentence shall be paid to Mr. Reed in a lump sum payment on or before his next regularly scheduled pay date after the Expiration Date or termination date or within twenty-one (21) days after the Expiration Date or termination date, whichever is later, and the benefits described in clause (iii) of the foregoing sentence shall be provided to Mr. Reed in accordance with the terms of the relevant benefit plans.

(c) <u>Termination by USN for Cause.</u> If USN terminates Mr. Reed's employment for Cause, Mr. Reed shall only be entitled to receive the compensation and other payments described in Section 7(b) above as of such termination date, with such compensation and other payments to be paid as if Mr. Reed's employment had automatically terminated without the giving of any Notice of Termination. As used in this Agreement, "Cause" shall mean a good faith, reasonably based determination by the Board of Trustees that there has been (i) any material failure of Mr. Reed to perform his duties specified in Section 2 of this Agreement (other than any such failure resulting from Mr. Reed's incapacity due to illness and other than death or disability which are addressed separately in this Agreement in Section 7(d)) after written notice of such failure has been given to Mr. Reed by the Board of Trustees and such failure shall have continued for thirty (30) days after receipt of such notice, (ii) gross or willful negligence or intentional wrongdoing or misconduct in the conduct of his USN job responsibilities, (iii) an intentional and material breach by Mr. Reed of Sections 5 or 6 of this Agreement, (iv) conviction of Mr. Reed of a felony offense involving moral turpitude, or (v) any similar actions or inactions by Mr. Reed which have, or are reasonably likely to have, a material adverse effect on his ability to effectively perform his duties or on the financial prospects or condition of USN. These may include any one or more of the following: Incompetence, immorality, intemperance, cruelty, neglect of duty, general neglect of the business of USN, unprofessional conduct, physical or mental incapacity, any violation of law involving moral turpitude or any conduct tending to reflect discredit upon USN, or upon the Director, or tending to seriously impair his continued usefulness as the chief administrative official of USN.

(d) <u>Termination by USN Without Cause or by Mr. Reed with Good Reason.</u> If either USN terminates Mr. Reed's employment for any reason other than for Cause or other than on account of death or disability or Mr. Reed terminates his employment for Good Reason (as hereinafter defined), USN shall as soon as practicable, pay Mr. Reed any compensation earned but unpaid as of the date of the termination of Mr. Reed's employment and any other payments described under Section 7(b);

As used in this Agreement, "Good Reason" shall mean: (A) a material adverse change in the powers, duties, responsibilities or functions of Mr. Reed as described in Section 2 hereof, including (without limitation) any change which would alter Mr. Reed's reporting responsibilities or cause Mr. Reed's position with USN to be of less dignity, responsibility, importance or scope than the position of Director of School; provided, however, that no such Good Reason shall exist until USN is provided written notice detailing such alleged material adverse change (within a period not to exceed ninety (90) days of the change), and USN fails to cure the alleged material adverse change within thirty (30) days; (B) without Mr. Reed's prior written consent, the relocation of USN's principal offices outside the greater Nashville, Tennessee metropolitan area or requiring Mr. Reed to be based other than at such principal offices; or (C) any material breach of this Agreement by USN; provided, however, that no such Good Reason shall exist until USN is provided written notice detailing such alleged material breach (within a period not to exceed ninety (90) days of the alleged breach) and USN fails to cure the alleged material breach within thirty (30) days.

(e) Either Party may, within fifteen (15) days after receipt of a Notice of Termination from the other Party, provide notice to the other Party that a dispute exists concerning the termination, in which event the dispute shall be resolved in accordance with Section 7 hereof.

7. **Resolution of Disputes.**

The Parties shall attempt in good faith to resolve any dispute arising out of or relating to this Agreement, including any dispute related to the establishment of conditions and goals with respect to bonus compensation payable under Section 3, promptly by negotiations between Mr. Reed (or his designee) and the Board of Trustees. Any Party may give the other Party written notice of any dispute not resolved in the normal course of business. Within ten (10) days after the effective date of such notice, Mr. Reed (or his designee) and a designated representative of USN shall meet at a mutually acceptable time and place within the Nashville, Tennessee metropolitan area, and thereafter as often as they reasonably deem necessary, to exchange relevant information and to attempt to resolve the dispute. If the matter has not been resolved within thirty (30) days of the disputing Party's notice, or if the Parties fail to meet within ten (10) days, either Party may initiate arbitration of the controversy or claim as provided below. If a negotiator intends to be accompanied at a meeting by an attorney, the other negotiator shall be given at least three (3) business days' notice of such intention and may also be accompanied by an attorney. All negotiations pursuant to this Section 7 shall be treated as compromise and settlement negotiations for the purposes of the federal and state rules of evidence and procedure.

Any controversy or claim arising out of or relating to this employment agreement shall be settled by binding arbitration administered by the American Arbitration Association under its National Rules for the Resolution of Employment Disputes or then current functional equivalent, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. Such arbitration shall take place within the greater Nashville, Tennessee metropolitan area unless the Parties agree to another location and shall be administered by a single arbitrator, who shall issue to the Parties a reasoned opinion with respect to all claims and defenses presented in the arbitration. Such arbitration shall be private, and the Parties agree to maintain the confidentiality of all such proceedings, except as required by law or to enforce or challenge the arbitration decision.

8. **Federal Tax Law Compliance.**

(a) <u>Code Section 409A and 457(f) Compliance.</u> Notwithstanding any term or provision herein, this Agreement shall be interpreted and administered in accordance with the applicable requirements of, and exemptions from, Code Section 409A in a manner consistent with Treas. Reg. Section 1.409A-1 <u>et seq.</u>, and Code Section 457(f) in accordance with applicable Treasury Regulations in effect thereunder from time to time. Such exemptions include, without limitation, the short-term deferral exemption, which applies when amounts are subject to tax when they are actually or constructively received, or when they vest under Code Section 457(f), within a short period of time after they vest. To the extent payments and benefits are subject to Code Section 409A or Code Section 457(f), this Agreement shall be interpreted, construed and administered in a manner that satisfies the requirements of (1) Code Section 409A(a)(2), (3) and (4) and Code Section 457(f), as the case may be; (2) Treas. Reg. Section 1.409A-1 <u>et seq.</u> and Treas. Reg. Section 1.457-11, as the case may be; and (3) other applicable authority issued by the Internal Revenue Service and the U.S. Department of the Treasury (collectively "Code Section 409A," where applicable).

Where the term "termination of employment" or "termination" or similar words and phrases describing termination of employment are used in this Agreement in connection with compensation or benefits that are subject to Code Section 409A, such terms are to be read as satisfying the

definition of a "separation from service" in Code Section 409A. It is understood that "separation from service" shall be defined as referenced under Treas. Reg. Section 1.409A-1(h). Neither Mr. Reed nor USN has the right to accelerate or defer the delivery of any payments required under this Agreement or other benefits except to the extent specifically permitted or required by Code Section 409A.

All reimbursements and in-kind benefits provided under this Agreement shall be made or provided in accordance with the requirements of Code Section 409A to the extent that such reimbursements or in-kind benefits are subject to Code Section 409A. All expenses or other reimbursements paid pursuant to this Agreement that are taxable to Mr. Reed shall in no event be paid later than the end of the calendar year following the calendar year in which Mr. Reed incurs such expense or pays the related tax. With regard to any provision in this Agreement for reimbursement of costs and expenses or in-kind benefits, except as permitted by Code Section 409A, the right to reimbursement or in-kind benefits shall not be subject to liquidation or exchange for another benefit and the amount of expenses eligible for reimbursement or in-kind benefits provided during any taxable year shall not affect the expenses eligible for reimbursement or in-kind benefits to be provided in any other taxable year.

(b) <u>Code Section 4958 Compliance</u>. Notwithstanding any term or provision herein, this Agreement shall be interpreted and administered in accordance with the applicable requirements of Code Section 4958 in a manner consistent with Treas. Reg. Section 53.4958-1 et seq. To the extent Mr. Reed meets the definition of a disqualified person under Code Section 4958(f)(1), this Agreement shall be interpreted, construed and administered in a manner that satisfies compliance with the requirements of (1) Code Section 4958; (2) Treas. Reg. Section 53.4958 et seq.; and (3) other applicable authority issued by the Internal Revenue Service and the U.S. Department of the Treasury (collectively, "Code Section 4958").

To ensure compliance with Section 4958 and to avoid the potential or actual conveyance of any private inurement or excess benefit from USN to Mr. Reed, the Parties agree to the immediate modification of any provision of the Agreement if, at any time during the Term of this Agreement, it is reasonably determined by either Party, in good faith, that any private inurement or excess benefit may or has been conveyed. The permitted modification of this Agreement shall include, without limitation, the correction or undoing of the conveyance of any private inurement or excess benefit to the extent possible and the taking of any additional measures necessary to place USN in the financial position it would have occupied if the private inurement or excess benefit had not occurred in accordance with Code Section 4958(f)(6).

## 9. Governing Law; Venue.

This Agreement shall be governed by and construed in accordance with the internal laws of the State of Tennessee and of the United States where federal law controls. Venue and jurisdiction of any act relating to this Agreement shall be in Davidson County, Tennessee.

## 10. Notice.

Any written notice to be given by either Party to the other hereunder shall be delivered either personally, by electronic mail or by private delivery service or any other means for which there is reliable proof of delivery (and shall be deemed to have been given on such delivery). Notice to USN shall be given to the Board Chair.

## 11. Severability.

In the event any provision hereof is determined to be invalid or ineffective, such adjudication shall not invalidate or render ineffective the balance of the provisions hereof.

## 12. Entire Agreement.

This Agreement constitutes the sole agreement between the Parties with respect to the employment of Mr. Reed by USN and supersedes any and all other agreements, oral or written, between the Parties as of the Effective Date.

## 13. Amendment and Waiver.

This Agreement may not be modified or amended except by a writing signed by the Parties. Any breach of any term or condition of this Agreement shall not be construed as a breach of any other term or condition of this Agreement. Nor shall any waiver of a breach of any term of this Agreement operate as a waiver of any other breach of the Agreement's terms or conditions, or any other terms or conditions, nor shall any failure to enforce any provisions hereof operate as a waiver of such provision or any other provision hereof.

## 14. Assignment.

This Agreement is a personal employment contract and the rights and interests of Mr. Reed hereunder may not be sold, transferred, assigned or pledged. USN may assign its rights under this Agreement to (i) any entity into or with which USN is merged or consolidated or to which USN transfers all or substantially all of its assets or (ii) any entity, which at the time of such assignment, controls, is under common control with, or is controlled by USN.

## 15. Successors.

This Agreement shall be binding upon and inure to the benefit of Mr. Reed and his heirs, executors, administrators and legal representatives. This Agreement shall be binding upon and inure to the benefit of USN and its successors and assigns.

## 16. Section Headings.

The section headings in this Agreement have been inserted for convenience and shall not be used for interpretive purposes or to otherwise construe this Agreement.

## 17. Execution.

This Agreement may be executed by the Parties by facsimile or other electronic copy which shall be deemed an original, and in one or more counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument.

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement intending to be legally bound hereby, effective as of the Effective Date.

*EXECUTION COPY*

UNIVERSITY SCHOOL OF NASHVILLE

By: _____
Ivanetta Davis-Samuels
USN Board Chair


AMANI REED

By: _____
Amani Reed

Page 9 of 13